UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EASTERN EXTERIOR WALL SYSTEMS, INC.,

                Plaintiff,

v.                                         6:22-CV-1318 (GTS)

GILBANE BUILDING COMPANY, f/k/a
Gilbane Construction Company,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

ADAMS LeCLAIR LLP                      DANIEL P. ADAMS, ESQ.
  Counsel for Plaintiff
28 East Main Street, Suite 1500
Rochester, NY 14614

ERNSTROM & DRESTE, LLP               JOHN W. DRESTE, ESQ.
  Counsel for Defendant
925 Clinton Square
Rochester, NY 14604

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this arbitration action filed by Eastern Exterior Wall Systems, Inc. ("Petitioner") against Gilbane Building Company ("Respondent") are (1) Petitioner's Petition to Compel Arbitration, and (2) Respondent's cross-motion to dismiss Petitioner's Petition for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 1, 6.) For the reasons set forth below, Respondent's cross-motion is granted, and Petitioner's Petition is denied and dismissed.

## I. RELEVANT BACKGROUND

### A. Underlying Dispute and Relevant Procedural History

The dispute arises from events occurring on a construction project in Utica, New York, commonly referred to as Mohawk Valley Health System-New Downtown Hospital on Lafayette Street (the "Project"). Respondent was the Project's construction manager, and Petitioner was Respondent's subcontractor, charged with furnishing and installing the wall panels that made up the façade of the new hospital. After incurring uncontemplated costs in erecting the wall panels, Petitioner demanded that Respondent pay those costs, because (allegedly) they were due to faulty control lines that were provided by Respondent (and from which Petitioner laid out its work). Respondent disagreed. The parties' attempted mediation of their dispute failed.

On November 16, 2022, Petitioner served a demand for arbitration on Respondent, in accordance with two parties' subcontract ("Trade Contract Agreement"). On November 21, 2022, Respondent rejected the arbitration demand. On December 8, 2022, Petitioner filed its Petition in this Court, seeking an order to compel binding arbitration with the American Arbitration Association, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, arguing that arbitration is required under with Article 5 of the General Conditions of Respondent's contract with the owner of the Project ("the Prime Contract"). On January 5, 2023, Respondent cross-moved to dismiss Petitioner's Petition for failure to state a claim.

### B. Summary of Parties' Arguments

#### 1. Petitioner's Memorandum of Law in Chief

Generally, in its memorandum of law in chief, Petitioner asserts two arguments. (Dkt. No. 1, Attach. 2.) First, Petitioner argues that the Court should issue an Order compelling arbitration of its claim, because Second Circuit precedent favors arbitration under the

circumstances. (*Id*. at 7-11.)[1] More specifically, Petitioner essentially asserts the following seven-part syllogism: (1) the parties agree that Petitioner's claim against Respondent is governed by the dispute resolution procedure set forth in Article 9 of the Prime Contract, specifically Article 9.1, which provides that "[a]ny Claim between the Owner and Construction Manager shall be resolved in accordance with the provisions set forth in this Article 9 and Article 5 of the General Conditions"; (2) Article 5.4.1. of the General Conditions contains an arbitration clause that is broad in that it gives the party making the claim or dispute (the "Aggrieved Party") the option to either litigate or arbitrate; (3) when an agreement to arbitrate is broad, binding Second Circuit precedent (and New York law) holds that there exists a "presumption of arbitrability" that can be overcome only "if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (with any "[d]oubts" to "be resolved in favor of coverage"); (4) as a result, here, a strong presumption of arbitration exists and can be defeated by Respondent only by showing that Petitioner's claim does not arise from, or is not otherwise related to, the parties' Trade Contract Agreement; (5) however, Petitioner's claim clearly arises from, and is related to, the parties' Trade Contract Agreement, because the furnishing and installing of the panels is expressly identified within Petitioner's scope of "Work" in that Trade Contract Agreement; (6) to the extent there is any ambiguity in the Trade Contract Agreement, that ambiguity must be resolved in favor of arbitration; and (7) as a result, the broad arbitration clause here gives Petitioner, as the Aggrieved Party referenced in Article 5.4.1. of the General Conditions, the option to arbitrate its claim. (*Id*.)

Second, Petitioner argues that the Supreme Court's recent decision in *Morgan v.*

---

[1] Page citations in this Decision and Order refer to the screen number used on the Court's Case Management/Electronic Filing ("CM/ECF") System, rather than the page number stated on the document shown on the screen.

*Sundance, Inc.*, 142 S. Ct. 1708 (2022), does nothing to deprive Petitioner of its (above-explained) right to select arbitration under the circumstances. *(Id.* at 11-13.)

### 2. Respondent's Combined Opposition Memorandum of Law and Memorandum of Law in Chief

Generally, in its combined opposition memorandum of law and memorandum of law in chief, Respondent asserts three arguments. (Dkt. No. 6, Attach. 4.) First, Respondent argues, the Petition must be denied and arbitration stayed, because, as a threshold matter, the parties did not agree to arbitrate (given that, later in Article 9 of the Prime Contract, they agreed to strike arbitration from their Trade Contract Agreement). *(Id.* at 14-17.) More specifically, Respondent argues as follows: (a) Article **9.2** of the Prime Contract (which is also part of the "dispute and resolution/litigation provision" that was expressly adopted by Paragraph 12.8 of the Trade Contract Agreement) provides that "[f]or any Claim subject to, but not resolved by mediation pursuant to Article 5 of the General Conditions, the method of binding dispute resolution shall be . . . **Litigation** in a court of competent jurisdiction" (emphasis in original), and here the underlying dispute was not resolved by mediation; (b) Petitioner's effort to wholly replace the Trade Contract Agreement (and Article 9.2 of the Prime Contract) with the entire dispute resolution process contained within Article 5 of the General Conditions is unavailing, because the specific litigation provision in Article 9.2 of the Prime Contract was clearly and unequivocally added to the Trade Contract Agreement (thus eliminating arbitration as dispute resolution), and such a specific modification cannot be overcome through general references to incorporation (especially where, as here, doing so would run afoul of the provision in Article 17.3.1 of the Trade Contract Conditions, providing that any "Owner's Dispute Resolution Process" would be applicable only in the event, and to the extent, that claims between

Respondent and the Owner "include or involve the Trade Contractor [Petitioner]," which Petitioner's claim does not do here); and (c) any preference in the Federal Arbitration Act for arbitration cannot impact the above analysis in the absence of an agreement to arbitrate (a point of law recognized in the Supreme Court case cited by Petitioner, *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 [2022]).  (*Id*. at 17-23.)

Second, Respondent argues, in the alternative, the Petition must be dismissed, because the Court should properly view Petitioner's choice to replace the arbitration terms in the initial Trade Contract Agreement with the litigation provision in the Prime Contract as an express waiver.  (*Id*. at 23-24.)

Third, Respondent argues, again in the alternative, neither arbitration process is mandatory, because (a) pursuant to Article 5.6.1 of the General Conditions of the Prime Contract, the arbitration process is "optional," (b) pursuant to the Owner's dispute resolution process, a condition precedent to arbitration has not been satisfied (specifically, the filing of a timely Notice of Claim, which referenced in Articles 5.6.2 and 5.2.3 of the General Conditions of the Prime Contract), and (c) pursuant to Article 17.8.1. of the Trade Contract Conditions, Respondent continued to retain its optional right to elect litigation in the face of any arbitration demand.  (*Id*. at 26-27.)

### 3.   Petitioner's Combined Reply Memorandum of Law and Opposition Memorandum of Law

Generally, in its combined reply memorandum of law and opposition memorandum of law, Petitioner asserts four arguments.  (Dkt. No. 7, Attach. 2.)  First, Petitioner argues, it did not negotiate to simply replace the Trade Contract Agreement's arbitration agreement with an agreement to litigate disputes; rather, Respondent simply agreed to Petitioner's demand that the

dispute resolution provisions must be the same as contained in the owner contract. (*Id*. at 4-6.)

Second, Petitioner argues, the dispute resolution provision in Article 9.1 of the Prime Contract replaced the dispute resolution process contained in Article 15.1 of the Trade Contract Agreement (and there is nothing indicating that Petitioner agreed to be bound by Article 9.2 of the Prime Contract). (*Id*. at 6-8.)

Third, Petitioner argues, the general conditions dealing with dispute resolution set forth in Articles 17.3.1 and 17.8.1 of the Trade Contract Agreement were also replaced by the dispute resolution provision set forth in Article 9 of the Prime Contract. (*Id*. at 8-10.)

Fourth, Petitioner argues, the issue of whether Petitioner has fulfilled the conditions precedent to arbitration is for the arbitrator to decide (not the Court). (*Id*. at 10.)

       **4.**      **Respondent's Reply Memorandum of Law (on Its Cross-Motion to Dismiss)**

Generally, in its memorandum of law in reply to Petitioner's opposition, Respondent argues that the Petition must be dismissed and arbitration stayed, because Petitioner's effort to recast Respondent's position is unavailing. (Dkt. No. 8.) More specifically, Respondent argues as follows: (a) whether the parties "negotiated" to modify the Trade Contract Agreement is (as a matter of law) irrelevant to the Court's interpretation of that contract's interpretation, given the clear, unambiguous, and complete nature of the modification (as well as the existence of the merger clause contained in Article 13.1 of the Trade Contract Agreement); (b) the "dispute and resolution/litigation provision" of the Prime Contract is clear, unambiguous and controlling; (c) Petitioner's efforts to continue to redraft the Trade Contract Agreement (so as to delete in its entirety all of Article 17 of the Trade Contract Conditions) must not be Permitted, because that is not what the Trade Contract Agreement (as modified) states; and (d) Petitioner's arguments

regarding the conditions precedent are unavailing, because issues of substantive arbitrability (such as the current issue) are for a Court to decide. (*Id*. at 5-10.)

## II. GOVERNING LEGAL STANDARD

Generally, the role of the courts in reviewing matters subject to arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA") is limited to determining two issues: (1) "whether a valid agreement or obligation to arbitrate exists," and (2) "whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).

"In the context of motions to compel arbitration under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted). The court must "consider all relevant, admissible evidence" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "If there is any issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (internal quotation marks omitted). Once the moving party establishes a *prima facie* showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).

## III. ANALYSIS

7

After carefully considering the matter, the Court grants Respondent's cross-motion, and denies and dismisses Petitioner's Petition, for each of the alternative reasons stated in Respondent's memoranda of law. *See, supra,* Parts I.B.2. and I.B.4. of this Decision and Order (describing three independent reasons). To those reasons, the Court adds the following three points (which are intended to supplement and not supplant those reasons).

First, it is true that, where an agreement to arbitrate exists, the Federal Arbitration Act ("FAA") creates a presumption of arbitrability, meaning that doubts as to the agreement's scope (e.g., whether the agreement encompasses the claims at issue) should be resolved in favor of coverage. *Paramedics Electromedicina Comercial, Ltd. v. GEMed. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir.2004). However, that presumption does not apply to the threshold issue of whether the parties agreed to arbitrate at all, which is strictly a matter of consent, and determined based on principles of contract law. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 298-300, & n.6 (2010); *Applied Energetics, Inc., v. NewOak Capital Mkst., LLC*, 645 F.3d 522, 526 (2d Cir. 2011); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir.1997). Here, because the Court finds that no agreement to arbitrate was reached, the Court also finds that no presumption of arbitrability exists.

Second, the Court is unpersuaded by Petitioner's argument that "there is nothing indicating that [it] agreed to be bound by th[e] determination [to check the box for litigation in Article 9.2 of the Prime Contract]." (Dkt. No. 7, Attach. 2, at 6-8.) To the contrary, at Petitioner's behest, Article 12.8 of the Trade Contract Agreement added the following clear and unambiguous language to Articles 9.20, 10.1 and 15.1 of the Trade Contract Agreement: "Dispute and resolution/litigation provision to be the same as contained in the Prime Contract between Construction Manager and Owner." (Dkt. No. 1, Attach. 5, at 15.) At the time of both

8

Petitioner's behest and the addition of the above-referenced language, the aforementioned box had already been checked (having been done so on or about September 18, 2019). (Dkt. No. 1, Attach.4, at 2.) Nonetheless, Petitioner signed the Trade Contract Agreement on October 15, 2020. (Dkt. No. 1, Attach. 5, at 20.) Of course, Article 9 of the Prime Contract expressly regards "Dispute Resolution." (Dkt. No. 1, Attach. 4, at 18-19.) Furthermore, Article 9.2 is clearly part of Article 9. (*Id*.)

Third, contrary to the factual allegations of Paragraph 19 of Petitioner's Petition (Dkt. No. 1, at ¶ 19), the Court is unable to find any conflict between, or ambiguity created by, Article 9.2 of the Prime Contract and Article 5 of the General Conditions, as argued by Petitioner. (*See, e.g.,* Dkt. No. 1, Attach. 2, at 6-7, 9-10.) Rather, Article 9.2 (which expressly regards "any Claim subject to, but not resolved by mediation as set forth in General Conditions Article 5") is reasonably construed as addressing only a subcategory of the claims that are generally referenced by Article 9.1 (which expressly regards "Any Claim between the Owner and Construction Manager"). (Dkt. No. 1, Attach. 4, at 18-19.)[2] In other words, Articles 9.1 and 9.2 are reasonably construed as standing together harmoniously, with Article 9.1 essentially setting forth a general rule and Article 9.2 essentially setting forth a specific exception to that general rule (after Article 9.1 set forth of a separate exception).[3] Simply stated, there exists here no

---

[2] The Court notes that this interpretation of Article 9.1 (i.e., as generally addressing claims that fall into at least two subcategories: claims that subject to mediation, and claims that are not subject to mediation) finds support in Article 5.5 of the General Conditions of the Prime Contract, which recognizes that some claims are not subject to mediation. (Dkt. No. 1, Attach. 7, at 7 [attaching Article 5.5 of the General Conditions, referring to mediation as "optional" and as triggered only by "a written demand therefore" after an unsuccessful attempt to "reach a negotiated settlement"].) Because Petitioner's claim was subject to, but not resolved by, mediation, it falls within Article 9.2.

[3] The Court notes that this interpretation of Article 9.1 (i.e., as setting forth a general rule, before setting forth exceptions to it) finds support in the next sentence of Article 9.1, which

conflict or ambiguity warranting either the imposition of a presumption or the resort to parole evidence.

For all of these reasons, Respondent's cross-motion is granted, and Petitioner's Petition is denied and dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Respondent's cross-motion to dismiss (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED** that Petitioner's Petition (Dkt. No. 1) is **DENIED** and **DISMISSED**.

Date:   October 24, 2023
       Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge

---

states, "*However*, for Claims arising from or relating to the Construction Manager's Preconstruction Services, no decision by the Initial Decision Maker shall be required as a condition precedent to mediation or binding dispute resolution, and Section 9.3 of this Agreement shall not apply." (Dkt. No. 1, Attach. 4, at 18-19 [emphasis added].) The Court notes also that its task is to construe the two subsections together in a way that they can reasonably both be reconciled and given effect. *See Johnson v. Cheney Bros.*, 102 N.Y.S.2d 302, 305 (N.Y. App. Div., 1st Dep't 1951) ("In the construction of contracts, as in statutes, all provisions contained therein are to be reconciled and given effect, if that can reasonably be done. Conflicts between different portions of the same instrument are not to be presumed if the various clauses can stand together.").